IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **GEORGE BAVELIS, et al.,** | : | |
| | : | |
| **Plaintiffs,** | : | **Case No. 2:17-cv-0327** |
| | : | |
| **v.** | : | **JUDGE ALGENON L. MARBLEY** |
| | : | |
| **TED DOUKAS, et al.,** | : | **U.S. Bankruptcy Court – Southern** |
| | : | **District of Ohio No. 2:10-ap-2508** |
| | : | |
| **Defendants.** | : | |

## OPINION & ORDER

This matter is before the Court on the Bankruptcy Court's Proposed Findings of Fact and
Conclusions of Law on Remaining Counts of Second Amended Complaint. (ECF No. 1-1).
Defendants have objected to the Proposed Findings of Fact and Conclusions of Law. (ECF No. 1-
2). Upon de novo review, the Defendants' objections are hereby **SUSTAINED IN PART** and
**OVERRULED IN PART**, and the Court **ADOPTS IN PART** the Bankruptcy Court's Proposed
Findings of Fact and Conclusions of Law.

### I. BACKGROUND

This case involves the bankruptcy of Mr. George Bavelis, several assignments he made to
his friend, Mr. Ted Doukas, and Mr. Bavelis's late realization that Mr. Doukas was not out to help
him but to defraud him. Mr. Bavelis has been involved in bankruptcy proceedings since 2010. He
brought this adversary proceeding against Mr. Doukas and his entities ("Doukas Defendants") in
October 2010, seeking to rescind several assignments that Mr. Bavelis, at least on paper, had made
to Mr. Doukas. The Bankruptcy Court issued Proposed Findings of Fact and Conclusions of Law
recommending that all of the assignments be rescinded and Mr. Bavelis be awarded compensatory
and punitive damages.

1

## A. Factual Background

### 1. Mr. Bavelis Meets Mr. Doukas

Mr. Bavelis has had a long career in the real estate business, dating back to the early 1970s. In addition to his real estate ventures, Mr. Bavelis was "a director of Sterling Bank and . . . the chairman of the board, chief executive officer and president of its parent, Sterling Holding." *Bavelis v. Doukas (In re Bavelis)*, 490 B.R. 258, 266 (Bankr. S.D. Ohio 2013) ("*Bavelis I*"). In keeping with his real estate background, Mr. Bavelis began working with Mr. Qureshi in the 2000s. They formed several "limited liability companies for the purpose of investing in not only gas stations, but also office buildings and mixed-use real estate developments": FLOMAQ, FLOVEST, BMAQ, GMAQ, and George Real Estate Holdings, LLC. *Bavelis I*, 490 B.R. at 266–67. The ownership structure of these LLCs varied, but Mr. Qureshi and Mr. Bavelis had either direct or indirect stakes in each one. FLOVEST, LLC, which succeed FLOMAQ, was owned equally by MAQ Management (of which Mr. Qureshi was president) and FLOHIO (which Mr. Bavelis managed). Membership of FLOHIO, in turn, was divided evenly between Bavelis Family, LLC ("Bavelis Family"), Yessios Limited Partnership and Vakaleris Family Limited Partnership. "The Bavelises' three daughters each owned 30% of Bavelis Family, with Mr. Bavelis and Mrs. Bavelis each owning 5%." *Bavelis I*, 490 B.R. at 267. In 2005, Mr. Bavelis and Mr. Qureshi formed BMAQ, LLC. BMAQ was owned "by equal members Bavelis Family and Qureshi Family, LLC ("Qureshi Family"), of which Mr. Qureshi was a manager. Next there was GMAQ, LLC ("GMAQ"), formed in 2006 by equal members Mr. Bavelis and Mr. Qureshi." *Id.* (internal citations omitted).

By the time of the events at issue, FLOVEST and BMAQ were deeply in debt, having borrowed approximately $21 million from several financial institutions. *Id.* "Mr. Bavelis

personally guaranteed (or otherwise had personal liability on) all of this debt." *Id.* The relationship between Mr. Bavelis and Mr. Qureshi eventually soured over a disagreement on how much Mr. Qureshi should be contributing to paying down this debt. *Id.* at 267–68.

In the fall of 2008, Mr. Bavelis met Mr. Doukas when Sterling Bank asked Mr. Bavelis to negotiate with Mr. Doukas over some real estate parcels. According to Mr. Bavelis, he and Mr. Doukas "hit it [off] very well." *Id.* at 269 (quoting Tr. At 474:9-475:2). At the time, Mr. Bavelis's brother had recently passed away, and through this newfound friendship with Mr. Doukas, Mr. Bavelis felt, "I just lost my brother and I find [sic] another brother." *Bavelis I*, 490 B.R. at 270 (quoting Tr. at 492:25–26).

## 2. The Assignments

By the spring of 2009, Mr. Bavelis's personal and financial situation was causing him considerable stress. His brother died at the end of 2008; he was having problems with Mr. Qureshi paying the loans for their LLCs; and Sterling Bank was experiencing financial difficulties. (2:10-ap-2508, Doc. No. 197, Tr. at 382: 25–27, 383: 1–8, 384: 9–17). It is at this point that Mr. Doukas and Mr. Bavelis agreed that Mr. Doukas would assist Mr. Bavelis with his affairs.

The exact nature of Mr. Doukas's involvement with Mr. Bavelis's business affairs is disputed. According to Mr. Bavelis and the Bankruptcy Court, in the spring of 2009, "Mr. Doukas promised Mr. Bavelis that he would negotiate with Mr. Qureshi in an attempt to resolve those problems in a manner favorable to Mr. Bavelis." *Bavelis I*, 490 B.R. at 272. Mr. Doukas asserts that Mr. Bavelis asked him for help. The parties agree, however, that Mr. Doukas was to assist by negotiating with Mr. Qureshi and helping Sterling Bank. Mr. Doukas, however, asserts that he did not purport to help Mr. Bavelis with his estate planning. (2:17-cv-327, Doc. No. 1-2 at 5–6, 32).

3

As part of Mr. Doukas's efforts to negotiate with Mr. Qureshi, Mr. Doukas represented to Mr. Bavelis that he needed stakes in the various LLCs that Mr. Qureshi and Mr. Bavelis owned. In March 2009, Mr. Doukas told Mr. Bavelis that he needed a 10% stake in GMAQ, which Mr. Bavelis transferred to Blair (a company wholly owned by Mr. Doukas) on March 27, 2009. *Bavelis I*, 490 B.R. at 272. According to Mr. Bavelis, and the Bankruptcy Court, "Mr. Doukas promised Mr. Bavelis that, as soon as a resolution was reached with Mr. Qureshi, he would return the March Agreement and reconvey the 10% interest back to Mr. Bavelis." *Bavelis I*, 490 B.R. at 273.

Mr. Doukas claimed in June 2009, however, that a 10% interest was not enough for him to be effective with Mr. Qureshi. Later that month, Mr. Bavelis and Mr. Doukas signed the R.P.M. Agreement. That agreement specified that Mr. Doukas would give Mr. Bavelis $50,000, and Mr. Bavelis would "transfer his '50% interest in GMAQ' to R.P.M. Recoveries, Inc. ("R.P.M."), a New York corporation of which Mr. Doukas was president." *Bavelis I*, 490 B.R. at 275–76. Mr. Bavelis believed this was a temporary arrangement, that his GMAQ interest "would be 'coming right back to me'" and "that he was giving '[Mr. Doukas] a larger percentage so that [he] can be able to be more effective.'" *Id.* at 276 (internal citations omitted).

Mr. Bavelis and Mr. Doukas entered into another agreement in June 2009 when Mr. Bavelis signed the Quick Capital Note ("QC Note") and other loan documents. These documents, on their face, obligated Mr. Bavelis to pay $14 million to Quick Capital. The Bankruptcy Court in its March 2013 opinion ("*Bavelis I*") found this loan to be invalid based on failure of consideration and fraud in the inducement. *Bavelis I*, 490 B.R. at 265.

Mr. Bavelis and Mr. Doukas also entered into several assignments in December 2009—again, all related to Mr. Doukas's promises to negotiate with Mr. Qureshi. *Bavelis I*, 490 B.R. at

4

298. Specifically, "Mr. Bavelis transferred to Nemesis all of his membership interest in GMAQ, even though he had already transferred 10% of that interest to Blair in March and 50% of that interest to R.P.M. in June 2009." *Bavelis I*, 490 B.R. at 299. Mr. Bavelis also "signed an agreement entitled 'BMAQ, LLC, Members, Transferor's and Transferee's Consent and Approval of Transfer of Ownership' ("December BMAQ Agreement"). By the December BMAQ Agreement, Mr. Bavelis purported to transfer to Nemesis all of Bavelis Family's right, title and interest in 100% of its membership interest in BMAQ." *Bavelis I*, 490 B.R. at 299 (internal citations omitted). Mr. Bavelis also signed an agreement related to FLOVEST by which he "purported to transfer to Nemesis all of FLOHIO's right, title and interest in 100% of its membership interest in FLOVEST." *Id.* at 299. Before Mr. Bavelis assigned Mr. Doukas the December LLC interests, "Mr. Doukas advised Mr. Bavelis that a deal had been struck with Mr. Qureshi" and that he only needed assignments of more interest "to finalize the deal." *Bavelis I*, 490 B.R. at 297–98.

Mr. Doukas's holding of these LLC interests became an issue in December 2009 and January 2010. Mr. Schaeffer, Mr. Bavelis's attorney, suggested that Mr. Bavelis file to dissolve FLOVEST. Mr. Bavelis's complaint in that matter "stated that FLOHIO was a 50% owner of FLOVEST even though he had signed the FLOVEST Agreement, purporting to transfer FLOHIO's interest in FLOVEST to Nemesis." *Bavelis I*, 490 B.R. at 303. Mr. Schaeffer and Mr. Bavelis's local Florida counsel "raised a concern about the representation Mr. Bavelis had made in the verified complaint regarding the ownership of FLOVEST." *Id.* Mr. Bavelis contends that he did not tell his attorneys about the assignments to Mr. Doukas because he considered those LLC interests to be coming back to him. At any rate, Mr. Bavelis became "desperate to get" Mr.

Doukas to return the LLC interests. *Id.* Mr. Doukas did not return the LLC interests despite Mr. Bavelis's repeated requests that he do so. *Id.* at 304–06.

## B. Procedural History

Mr. Bavelis initiated Chapter 11 bankruptcy proceedings on July 20, 2010 and commenced this adversary proceeding on October 20, 2010. Mr. Bavelis's Second Amended Complaint (2:10-ap-2508, Doc. No. 490) alleged 17 counts against various defendants, including Mr. Doukas and several entities under his control. Counts Three, Six, Nine, and Fifteen through Seventeen were disposed of in other proceedings or withdrawn. (2:17-cv-327, Doc. No. 1-1 at 10–11). Mr. Bavelis settled his claims against "all of the defendants named in the Complaint other than Stravato and the Doukas Defendants." (*Id.* at 12).

The Bankruptcy Court held trial on the remaining claims in two phases. In Phase I, the Bankruptcy Court tried Counts One, Two, Four, and Ten. Those counts alleged that various assignments that Mr. Bavelis made to Mr. Doukas or Mr. Doukas's entities were void on any number of legal theories, including fraudulent inducement. In Phase II, the Bankruptcy Court tried Counts Five, Seven, Eleven, Twelve, Thirteen and Fourteen—all claims against the Doukas Defendants—and Count Eight, a claim against Mr. Stravato, Mr. Doukas's former attorney. (*Id.* at 12–13).

Following these two trials, the Bankruptcy Court issued its Proposed Findings of Fact and Conclusions of Law. The Bankruptcy Court recommended dismissal of Counts Five, Eight, and Fourteen as a matter of law and dismissal of Counts Seven, Ten, Twelve, and Thirteen as moot. (*Id.* at 17). The Bankruptcy Court recommended that this Court find for Mr. Bavelis on Counts One, Two, Four and Eleven and award compensatory damages in the amount of $116,600 and punitive damages in the amount of $1 million. (*Id.* at 76).

6

The Doukas Defendants timely objected to the Bankruptcy Court's findings on four grounds: (1) the Bankruptcy Court lacked jurisdiction over Mr. Bavelis's state law claims (Counts One, Two, Four, and Eleven), (2) the Doukas Defendants should have received a jury trial on the state law claims, (3) neither punitive damages nor compensatory damages were appropriate, and (4) Mr. Bavelis's fraudulent inducement claims fail for lack of reliance. (2:17-cv-327, Doc. No. 1-2 at 34–35). The Bavelis plaintiffs timely filed their response, and this case is now ripe.

## II. STANDARD OF REVIEW

The contours of a bankruptcy court's jurisdiction are governed by statutory law and Article III of the Constitution. When adjudicating non-core claims, a bankruptcy court has authority to issue only proposed findings of fact and conclusions of law. 28 U.S.C. § 157(c)(1); *Stern v. Marshall*, 564 U.S. 462, 471 (2011). Parties may then file objections, and it is the role of the district court to "make a de novo review upon the record or, after additional evidence, of any portion of the bankruptcy judge's findings of fact or conclusions of law to which specific written objection has been made . . . ." Fed. R. Bankr. P. 9033(d). This Court reviews de novo "those matters to which any party has timely and specifically objected." 28 U.S.C. § 157(c). See also Fed. R. Bankr. P. 9033(d) ("The district judge shall make a de novo review upon the record or, after additional evidence, of any portion of the bankruptcy judge's findings of fact or conclusions of law to which specific written objection has been made in accordance with this rule.").

This Court limits its de novo review to those findings to which the Doukas Defendants specifically objected, rather than the entirety of the Bankruptcy Court's proposed findings. Neither the Supreme Court nor the Sixth Circuit has squarely addressed this question, but the Supreme Court has read 28 U.S.C. § 157(c)(1) as "confin[ing] review to 'matters to which any party has timely and specifically objected'" and noted the implicit "time constraint[]" involved.

7

*Kontrick v. Ryan*, 540 U.S. 443, 453 (2004). The Supreme Court has also held that parties'

consenting to bankruptcy court jurisdiction does not pose a problem under Article III and that such

consent need not be express. *Wellness Int'l Network, Ltd. v. Sharif*, 135 S.Ct. 1932, 1944–46,

1947–48 (2015). In that sense, bankruptcy courts are similar to magistrate judges. *Id.* It is well-

settled that Article III does not require de novo review of magistrate judge opinions "unless

requested by the parties." *Peretz v. United States*, 501 U.S. 923, 939 (1991) (quoting *United

States v. Peacock*, 761 F.2d 1313, 1318 (9th Cir. 1985). Although the Sixth Circuit has suggested

in an unpublished opinion that "Article III might separately impose on the district court a duty to

review de novo all of the bankruptcy court's proposed findings and conclusions," *Waldman v.

Stone*, 599 F. App'x 569, 573 (6th Cir. 2015) (unpublished), this Court finds the analogy to

magistrate judge jurisdiction persuasive. Therefore, this Court will proceed with "de novo review

[that] is directed only toward 'any portion of the bankruptcy judge's [determination] to which

specific written objection has been made.'" *Silagy v. Morris*, No. 5:13-cv-2645, 2015 WL

853499, at *2 (N.D. Ohio Feb. 26, 2015).

## III. ANALYSIS

### A. The Bankruptcy Court's Jurisdiction

Defendants do not contest the finding that Mr. Bavelis's state-law claims are non-core. A

core proceeding is one that "either invokes a substantive right created by federal bankruptcy law

or one which could not exist outside of the bankruptcy." *Lowenbraun v. Canary (In re

Lowenbraun)*, 453 F.3d 314 (6th Cir. 2006) (quoting *Sanders Confectionery Prods., Inc. v. Heller

Financial, Inc.*, 973 F.2d 474, 482 (6th Cir. 1992)). Mr. Bavelis's claims here are based on

Florida law on fraudulent inducement, not federal bankruptcy law. Mr. Bavelis would have these

same claims regardless of his bankruptcy. Thus, these claims are non-core.

8

Defendants contest the requirement that non-core claims must be "at least 'related to'" a bankruptcy proceeding" for the bankruptcy court to have jurisdiction. *Waldman v. Stone*, 698 F.3d 910, 916 (6th Cir. 2012). The Doukas Defendants argue that the appropriate standard for determining jurisdiction in this case is "whether there is a close nexus to the bankruptcy plan." *Binder v. Price Waterhouse & Co., LLP (In re Resorts Int'l, Inc)*, 372 F.3d 154, 167 (3d Cir. 2004). That test applies only to disputes that "arise[] post-confirmation," *Thickstun Bros. Equip. Co. v. Encompass Servs. Corp. (In re Thickstun Bros. Equip. Co., Inc.*, 344 B.R. 515, 521 (B.A.P. 6th Cir. 2006). *See also Papas v. Buchwald Capital Advisors, LLC (In re Greektown Holdings, LLC)*, 728 F.3d 567, 578 (6th Cir. 2013) (discussing the standard to apply to a dispute that arose after plan confirmation). The dispute here arose long before plan confirmation and has continued afterwards. The appropriate standard for determining bankruptcy court jurisdiction is whether Mr. Bavelis's claims are related to the bankruptcy proceedings.

A claim "is related to bankruptcy [if] *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy*." *Mich. Empl. Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.)*, 930 F.2d 1132, 1142 (6th Cir. 1991) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)). The Doukas Defendants assert that Mr. Bavelis's claims do not meet this test because Mr. Bavelis was able to satisfy his debt obligations without compensation from Defendants or assets from the LLCs. (2:17-cv-327, Doc. No. 1-2 at 12–13). Mr. Bavelis's claims meet the requirements for "related to" jurisdiction. Proceedings that would result in additional assets for the bankrupt estate are "related to" bankruptcy proceedings. *See, e.g., Browning v. Levy*, 283 F.3d 761, 773 (6th Cir. 2002) (finding that claims "are related to [a] bankruptcy proceeding because, if they had been brought during the proceeding, any recovery received by [the debtor] would have represented an asset, available for distribution"); *Waldman*,

9

698 F.3d at 916 ("[A] damages award on Stone's affirmative claims would provide assets for his other creditors."). Here, Mr. Bavelis has alleged that the assignments he made to the Doukas Defendants are void under several legal theories. If Mr. Bavelis is correct, he would then be the owner of the assigned property, which could, like the potential assets in Browning, form part of his estate available for distribution.

The Doukas Defendants assert that Mr. Bavelis's claims are not related to the bankruptcy proceeding because the assignments at issue are between a non-debtor (the Bavelis LLCs) and the Doukas Defendants, who did not seek assets from Mr. Bavelis in his bankruptcy. (2:17-cv-0327, Doc. No. 1-2 at 11). But a claim need not involve the debtor to fall under "related to" jurisdiction. "Proceedings 'related to' a bankruptcy proceeding include 'suits between third parties which have an effect on the bankruptcy estate.'" *Lindsey v. O'Brien, Tanski, Tanzer & Young Health Care Providers (In re Dow Corning Corp.)*, 86 F.3d 482, 490 (6th Cir. 1996) (quoting *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 n.5 (1995)). *See also Sanders Confectionery Prods. v. Heller Fin., Inc.*, 973 F.2d 474, 482 (6th Cir. 1992) ("The matter need not directly involve the debtor, as long as it 'could alter the debtor's rights [or] liabilities'") (quoting *Wolverine*, 930 F.2d at 1142).

The Doukas Defendants allege that Mr. Bavelis's estate would not be affected by these claims for rescission because "Mr. Bavelis owns less than 1% of the overall interest in FLOHIO" and only 5% ownership in Bavelis Family. (2:17-cv-0327, Doc. No. 1-2 at 12.)[1] When considering potential claims against the bankrupt estate, the Sixth Circuit rejected an argument that a claim was not "related to" a bankruptcy proceeding because of "the supposedly negligible impact of the claims on the estate." *In re Nat'l Fin. Enters.*, 497 F. App'x 491, 499 (6th Cir. 2012). "The standard for determining a bankruptcy court's jurisdiction is whether a case could

---

[1] Defendants appear to be mistaken as to Mr. Bavelis's stake in FLOHIO. It is his stake in FLOVEST that is less than 1% (0.8333%). His stake in FLOHIO is 1.666%.

10

'conceivably have any effect on the estate,' not whether it would definitely affect it in a material way." *Id.* (quoting *In re Dow Corning*, 86 F.3d at 489). Thus, it does not matter that Mr. Bavelis could pay all of his liability from his current assets without these LLC interests. What matters is that they could conceivably affect his estate.

The Doukas Defendants' argument that the Bankruptcy Court did not have jurisdiction because Mr. Bavelis was able to pay his creditors, in full, before the resolution of the adversary proceeding is likewise without merit. (2:17-cv-0327, Doc. No. 1-2 at 12–19). Whether a court has "subject matter jurisdiction . . . is tested as of the time the action is filed and subsequent changes will not operate to divest a court of its jurisdiction once it has been properly invoked." *Superior Bank, FSB v. Boyd (In re Lewis)*, 398 F.3d 735, 743 (6th Cir. 2005). Several circuits have rejected the Doukas Defendants' argument that events after the filing of the complaint divest a bankruptcy court of jurisdiction. *See, e.g., Nuveen Mun. Trust v. Withumsmith Brown, P.C.*, 692 F.3d 283, 299 (3rd Cir. 2012) (rejecting the argument that "we should deviate from the hornbook rule that jurisdiction is assessed at the time of the filing of a complaint and assess jurisdiction now because [of] significant intervening events," namely, "that the Plan has been confirmed and Bayonne's bankruptcy proceeding is winding down"); *Newby v. Enron Corp. (In re Enron Corp. Sec.)*, 535 F.3d 325 (5th Cir. 2008) ("'if "related to" jurisdiction actually existed at the time of . . . removal' subsequent events '[can]not divest the district court of that subject matter jurisdiction.'") (quoting *In re Celotex Corp.*, 124 F.3d 619, 626 (4th Cir. 1997)). The Sixth Circuit has indirectly addressed the same issue, noting in *Lowenbraun* that a debtor who "fully satisfied her obligation . . . would not be dispositive in determining whether her state-law action was a core proceeding." *Lowenbraun*, 453 F.3d at 320–21. As such, the bankruptcy court's jurisdiction is determined at

the time of the filing of Mr. Bavelis's Second Amended Complaint, at which point the Bankruptcy Court had "related to" jurisdiction as described above.

## B. Doukas Defendants' Right to Jury Trial

### 1. Right to a Jury Trial

The Doukas Defendants argue that they had a right to a jury trial, which they did not waive. Whether the right to a jury trial exists is a question of "federal and not state law." *K.M.C. Co. v. Irving Trust Co.*, 757 F.2d 752, 756 (6th Cir. 1985). In a claim for equitable relief, such as rescission, a party does not have a right to a jury trial. *See, e.g., Arber v. Essex Wire Corp.*, 490 F.2d 414, 421 – 22 (6th Cir. 1974) (no right to a jury trial where relief requested was rescission). Mr. Bavelis, however, alleged not only rescission but also damages. Where both equitable and legal claims are present, parties retain their right to trial by jury on their legal claims. *See Dairy Queen v. Wood*, 369 U.S. 469, 472–73 (1962); *Beacon Theatres v. Westover*, 359 U.S. 500 (1959). Thus, the Doukas Defendants had a right to a jury trial on Mr. Bavelis's claims for which he was requesting damages. This right, however, could still be waived.

### 2. Waiver of Jury Trial Right

Although the Constitution guarantees "[t]he right to trial by jury" in certain circumstances, such right is still "subject to waiver." *Preferred RX, Inc. v. American Prescription Plan, Inc.*, 46 F.3d 535, 548 (6th Cir. 1995). "[C]ourts closely scrutinize waivers of constitutional rights, and 'indulge every reasonable presumption against a waiver.'" *Sambo's Restaurants, Inc. v. City of Ann Arbor*, 663 F.2d 686, 690 (6th Cir. 1981). To assert the right to trial by jury, Federal Rule of Civil Procedure 38(b) requires that a party file a jury demand "no later than 14 days after the last pleading directed to the issue is served," Fed. R. Civ. P. 38(b)(1). Federal Rule of Civil Procedure 38(d), which applies to Bankruptcy proceedings through Federal Rule of Bankruptcy Procedure

12

9015(a), specifies that "[a] party waives a jury trial unless its demand is properly served and filed." This requirement is the first potential waiver that the parties contest.

To determine the timing of a waiver, this Court must first determine when the "last pleading directed to the issue [was] served." Fed. R. Civ. P.38(b)(1). For purposes of Federal Rule of Civil Procedure 38, pleadings are those documents set out in Federal Rule of Civil Procedure 7(a): the complaint, answer, reply to a counterclaim, answer to a cross-claim, third-party complaint, third-party answer, or reply to an answer if the court so orders. *Burns v. Lawther*, 53 F.3d 1237, 1241 (11th Cir. 1995) (collecting cases). Generally, all that is needed for a "last pleading directed to the issue" is an answer. *See, e.g., Ford Motor Credit Co. LLC v. Esposito*, 2010 WL 3489123, at *2 (W.D. Pa. Sept. 1, 2010) ("the term 'last pleading' means the answer to a complaint or reply to a counterclaim or crossclaim that contests the issue and was last filed."); *Misco, Inc. v. U.S. Steel Corp.*, 784 F.2d 198, 205 (6th Cir. 1986) (acknowledging that the plaintiff was late in filing a jury demand after the defendant had filed an answer); *In re Kaiser Steel Corp.*, 911 F.2d 380, 388 (10th Cir. 1990) ("The "last pleading directed to such issue" will generally be an answer or a reply, if appropriate, and is determined on a claim by claim basis."); *Barron v. Bankers Life and Cas. Co.*, 288 F.R.D. 187, 189 (W.D. Tenn. 2012) (considering a party's answer to be the last pleading).

The Bavelis plaintiffs filed their adversary proceeding complaint on October 20, 2010. (2:10-ap-2508, Doc. No. 1). The Doukas Defendants timely filed a Motion to Dismiss on December 8, 2010 (2:10-ap-2508, Doc. No. 63), which the Bankruptcy Court denied on May 31, 2011. (2:10-ap-2508, Doc. No. 95). The Doukas Defendants then filed their Answer on June 26, 2011. (2:10-ap-2508, Doc. No. 122). Nowhere in their June Answer do the Doukas Defendants

request a jury trial on the Bavelis Plaintiffs' claims. This failure to request a jury trial waived any right to a jury trial on the claims in Mr. Bavelis's first complaint.

The Bavelis Plaintiffs, however, filed two amended complaints. Amending a complaint may, under certain circumstances, renew the time period for filing a jury demand. "The fact that an amended complaint was later filed is of no consequence when no new issues or facts are introduced." *Irvin v. Airco Carbide*, 837 F.2d 724, 727 (6th Cir. 1987). The Sixth Circuit has previously found that amending a complaint to add a claim based on facts already alleged does not extend the time for properly filing a jury demand. *See Irvin*, 837 F.2d at 727. No new issues or facts are introduced where "the claims 'turn on the same matrix of facts, and concern the same general area of dispute.'" *Allega Network LLC v. Ruth*, No. 10-10941, 2010 WL 3190870, at *4 (E.D. Mich. Aug. 12, 2010) (quoting *SEC v. Battenberg*, No. 06-14891, 2009 WL 3497803, at *1 (E.D. Mich. Oct. 29, 2009)).

The Bavelis Plaintiffs filed a First Amended Complaint on October 30, 2013 (2:10-ap-2508, Doc. No. 359) and a Second Amended Complaint on June 12, 2014 (2:10-ap-2508, Doc. No. 490). Mr. Bavelis states that the First Amended Complaint was filed to add Leftheris Properties as a defendant, "make[] explicit [Mr. Bavelis's] claim to set aside June 2009 R.P.M. agreement as to purported assignment of Mr. Bavelis' interest in GMAQ . . . and add[] Counts 16 and 17 for abuse of process based on, *inter alia*, conduct described in the Sanctions Order." (2:17-cv-327, Doc. No. 1-3 at 17). While Mr. Bavelis did introduce a new assignment in his First Amended Complaint, this is not enough to revive the right to a jury trial as to the previously joined Defendants. The allegations regarding the June 2009 assignment are based on the same legal theories as Mr. Bavelis's previous claims. The assignments occurred in the same meeting in

14

which Mr. Bavelis assigned other LLC interests to Mr. Doukas. The June 2009 assignment formed part of Mr. Doukas's larger fraudulent scheme.

While the Defendants who were included in the first Complaint had waived their right to a jury trial by the time Mr. Bavelis amended his complaint, Leftheris Properties had not. *See Rupe v. Fourman*, 532 F.Supp. 344, 351 (S.D. Ohio 1981) ("However, Defendant's waiver does not bind the two other defendants added by Plaintiff's amended complaint."). The Doukas Defendants filed their Answer to Mr. Bavelis's amended complaint on November 13, 2013 (2:10-ap-2508, Doc. No. 369). They then proceeded to file a Notice of Jury Demand (2:10-ap-2508, Doc. No. 381) on November 27, 2013—fourteen days after the last pleading directed to the issue. Thus, Leftheris Properties preserved their right to a jury trial on all the issues raised in Mr. Bavelis's First Amended Complaint.

Even though Leftheris Properties Corp. had a right to a jury trial on all the claims in the amended complaint, such right to a jury trial would be waived upon entry of default judgment. Although most cases have dealt with the effect of default on the right to a jury trial in the context of damages, the reasoning is likewise applicable here. When a party defaults, that "default operates as a deemed admission of liability." *Matter of Dierschke*, 975 F.2d 181, 185 (5th Cir. 1992). Thus, Plaintiffs are correct that upon default there can no longer exist any right to a jury trial because liability has already been determined. *See, e.g., Henry v. Sneiders*, 490 F.2d 315, 318 (9th Cir. 1974); *Olcott v. Delaware Flood Co.*, 327 F.3d 1115, 1124 (10th Cir. 2003). While Federal Rule of Civil Procedure 55 expressly preserves the statutory right to a jury trial upon default, an adversary proceeding, where a jury trial can be had only upon consent of the parties, does not contain a statutory right to a jury trial. Here, the Bankruptcy Court entered an order of default against Quick Capital of L.I. Corp., Nemesis of L.I. Corp., R.P.M. Recoveries, Inc., and

15

Leftheris Properties Corp. (2:10-ap-2508, Doc. No. 579). Defendants ceased to have a right to a jury trial at that point.

Even if the Defendants had maintained their right to a jury trial, they would have waived this right by participating in the two bench trials without objection. Mr. Doukas contends that he again asserted his right to a jury trial at a scheduling conference on March 18, 2015 and that the Bankruptcy Court erred in setting a bench trial because the Bankruptcy Court Judge was constitutionally prohibited from conducting a jury trial. (2:17-cv-327, Doc. No. 1-2 at 20–22). Mr. Doukas is wrong on both claims.

As both the Bankruptcy Court and the Plaintiff have pointed out, a party can waive the right to a jury trial by conduct. Indeed, "a party waives any right it may have to trial by jury by participating without objection in a bench trial." *Preferred RX, Inc. v. Am. Prescription Plan, Inc.*, 46 F.3d 535, 548 (6th Cir. 1995). This waiver can be effected by failing to object to a court order setting a case "*for a trial before the court.*" *Sewell v. Jefferson County Fiscal Court*, 863 F.2d 461, 465 (6th Cir. 1988). The Bankruptcy Court's scheduling order (2:10-ap-2508, Doc. No. 591) makes no mention of conducting a jury trial. Even if Mr. Doukas was operating under the mistaken assumption that the lack of specificity as to the manner of trial indicated that the trial would be by jury, the Bankruptcy Court's note that "Mr. Doukas stated on the record that he has no objection to proceeding in the fashion requested by Mr. Bavelis" should have alerted him to the fact that there would be no jury present. (2:10-ap-2508, Doc. No. 591 at 2). Tellingly, Mr. Doukas never claims he objected to the bench trial between the time the scheduling order came out and when the bench trial was concluded.

Mr. Doukas's defense that "the Doukas Defendants could not have demand[ed] that the Bankruptcy court Judge seat a jury . . . because it was unconstitutional for the Bankruptcy Court

16

Judge to conduct a jury trial on these non-core, state law claims" is to no avail. (2:17-cv-327, Doc. No. 1-2 at 23). First, Mr. Doukas is incorrect in stating that it is not permissible to have a jury trial in Bankruptcy Court on state law claims. If a party has a right to a jury trial "in a proceeding that may be heard by the bankruptcy judge" the bankruptcy judge can conduct a jury trial "provided that the district court has specially designated that the bankruptcy court could exercise such jurisdiction and that all of the parties have expressly consented." 28 U.S.C. § 157(e); *In re Petro Acquisitions, Inc.*, 2009 WL 248489, at *3 (S.D. Ohio Jan. 30, 2009). Had Mr. Doukas been so concerned with the lack of a jury trial, he could have made a demand upon the District Court to withdraw the proceeding from bankruptcy court, which the District Court would have had discretion to grant. *Dirt Road Enters., LLC v. Equilon Enters., LLC (In re Petro Acquisitions, Inc.)*, 2009 U.S. Dist. LEXIS 133518 (S.D. Ohio 2009). But Mr. Doukas failed to do so.

Throughout the pendency of this adversary proceeding, the Doukas Defendants had numerous opportunities to assert any purported right to a jury trial they may have had. The Doukas Defendants failed to do so. By the time the Bankruptcy Court heard Mr. Bavelis's claims, the Doukas Defendants had lost any right to a jury trial they may have once had.

### C. Florida Fraud Claim

Mr. Bavelis's Second Amended Complaint alleges fraudulent inducement as to "the March 2009 Assignments of purported interests in FLOVEST, GMAQ, and BMAQ," June 2009 GMAQ Agreement (Count One); December 2009 Assignment of interests in FLOVEST, GMAQ, and BMAQ (Count Two); and "the assignments from GMAQ and FLOVEST to Leftheris" (Count Four) (what the Bankruptcy Court calls "transfers that Doukas caused Nemesis to make to Leftheris." (2:17-cv-327, Doc. No. 1-1 at 41).). (2:10-ap-2508, Doc. No. 490 at 37–41). The

17

Bankruptcy Court recommended finding for Mr. Bavelis on his fraudulent inducement claims. The Doukas Defendants object to this finding and allege that Mr. Bavelis cannot show reliance. (2:17-cv-327, Doc. No. 1-2 at 30). The Doukas Defendants do not object to the application of Florida law. Therefore, this Court will analyze the Doukas Defendants' objections under Florida law.

The Plaintiffs have asserted that issue preclusion applies to the Bankruptcy Court's March 2013 findings. In its previous decision, which was upheld on appeal, *Quick Capital of L.I. Corp. v. Bavelis (In re Bavelis)*, No. 13-8015, 2013 WL 6672988 (B.A.P. 6th Cir. Dec. 19, 2013), the Bankruptcy Court found that Mr. Doukas made several fraudulent statements that induced Mr. Bavelis to sign the QC Note in addition to assigning him the LLC interests. Mr. Bavelis further argues that it is Mr. Bavelis's subjective view that matters and "that Doukas engaged in a 'confidence' scheme by utilizing his common Greek heritage, a purported religious connection, and Mr. Bavelis's precarious emotional state . . . for the specific purpose of inducing Mr. Bavelis's reliance." (2:17-cv-327, Doc. No. 1-3 at 31–32).

Any finding on fraudulent inducement is heavily fact-dependent. Therefore, this Court must first determine the preclusive effect, if any, of the Bankruptcy Court's factual findings.

### 1. Issue Preclusion

Issue preclusion bars parties from litigating "a matter that has been actually litigated and decided." *Corzin v. Fordu (In re Fordu)*, 201 F.3d 693, 703 (6th Cir. 1999). Issue preclusion applies when four requirements are satisfied: "(1) the precise issue must have been raised and actually litigated in the prior proceedings; (2) the determination of the issue must have been necessary to the outcome of the prior proceedings; (3) the prior proceedings must have *resulted in a final judgment on the merits*; and (4) the party against whom estoppel is sought must have had a

18

full and fair opportunity to litigate the issue in the prior proceeding." *Georgia-Pacific Consumer Prods. LP v. Four-U-Packaging, Inc.*, 701 F.3d 1093, 1098 (6th Cir. 2012).

In *Bavelis I*, the question was "whether Quick Capital of L.I. Corp. ("Quick Capital") or any entity affiliated with it holds a claim against the Chapter 11 bankruptcy estate of George A. Bavelis . . . ." *Bavelis I*, 490 B.R. at 264. The dispute there involved an alleged loan for $14 million made by Quick Capital to Mr. Bavelis. Mr. Bavelis, however, argued that he and Mr. Doukas had an understanding that Mr. Bavelis would not have any obligations under the loan and that Mr. Doukas made false statements to convince him to sign the loan documents. The Bankruptcy Court ultimately found that "Mr. Doukas made several representations that fraudulently induced Mr. Bavelis to sign the QC Loan Documents." *Id.* at 265.

The assignments at issue here were made at different times and under slightly different factual circumstances. Nevertheless, some factual findings from *Bavelis I* apply here.

In finding that Mr. Doukas fraudulently induced Mr. Bavelis to execute the QC Note, the Bankruptcy Court in *Bavelis I* mainly focused on Mr. Doukas's promise to "deposit $80,000 to $120,000 a month in Sterling Bank." *Bavelis I*, 490 B.R. at 276. But the Bankruptcy Court also relied on Mr. Doukas's other promises: that he would help "resolve the issues with Mr. Qureshi and that he would purchase nonperforming Sterling Bank loans as well as the Colonial Bank and First Southern loans guaranteed by Mr. Bavelis." *Id.* Additionally, Mr. Doukas's promise regarding estate planning came into the analysis. *Bavelis I*, 490 B.R. at 278. These promises all formed the basis of the Bankruptcy Court's conclusion that Mr. Doukas made materially false statements that fraudulently induced Mr. Bavelis to sign the QC Note. *See Bavelis I*, 490 B.R. at 320–21. Most relevant for Mr. Bavelis's current claims, the Bankruptcy Court found that "'[t]he full range of the troubling series of events visited on' Mr. Bavelis leads the Court to conclude that

19

Mr. Doukas *never intended to fulfill his promise to Mr. Bavelis of working to resolve matters with Mr. Qureshi in a manner favorable to Mr. Bavelis . . . ." Bavelis I*, 490 B.R. at 318 (quoting *Braddock v. Braddock*, 871 N.Y.S.2d 68, 72 (N.Y. 2009) (emphasis added).

Here, Mr. Bavelis alleges that all of the LLC assignments he made to Mr. Doukas were based on Mr. Doukas's statements that he needed interests in those LLCs to be effective in his negotiations with Mr. Qureshi and that Mr. Doukas would then "assign the interest back." (2:10-ap-2508, Doc. No. 490 at 16–17). If they have preclusive effect, however, the *Bavelis I* findings that Mr. Doukas made promises to Mr. Bavelis that he "never intended to fulfill . . . but instead intended to take advantage of Mr. Bavelis and deprive him of his assets" would essentially decide the issue. *Bavelis I*, 490 B.R. at 318.

To determine issue preclusion, this Court must first determine which of the issues that would support a finding of fraudulent inducement in this case were raised and actually litigated in the March 2013 decision. "The 'identity of issues' element requires that 'the key issue in both cases is the same . . . .' Where a litigant brings repeated actions based upon the same operative facts, issue preclusion may still properly apply despite a change in legal theory or the 'cast of characters-defendants.'" *Georgia-Pacific Consumer Prods. LP v. Four-U-Packaging, Inc.*, 701 F.3d 1093, 1098 (6th Cir. 2012) (internal citations omitted). Thus, although the issue in the March 2013 proceedings was the validity of the QC Note and fraud was analyzed under Ohio and New York law, the underlying facts were largely the same as those at issue here.

The issues here were actually litigated in the March 2013 proceeding. As Mr. Bavelis pointed out in his Proposed Findings of Fact and Conclusions of Law on the claims at issue here, the Doukas Defendants in their Proposed Findings filed in July 2012 asserted that "the factual circumstances of the sale of LLC interests were tried in the context of the Plaintiff's/Bavelis's

allegations that the membership interest sales were part of Doukas's fraudulent conduct" and invited the Bankruptcy Court to make "a finding regarding the validity of the transfer of Florida LLC interests." (2:10-ap-2508, Doc. No. 245 at 3). Although the *Bavelis I* court was determining the validity of the QC Note as opposed to the LLC assignments, the issues of Mr. Doukas "[intent] to take advantage of Mr. Bavelis and deprive him of his assets" and that Mr. Doukas had no intention of keeping his promise to help Mr. Bavelis with Mr. Qureshi were litigated.

Whether the Bankruptcy Court's March 2013 findings on fraudulent inducement were necessary to the outcome is a closer call. The Bankruptcy Court invalidated the QC Note on both fraudulent inducement and failure of consideration. *Bavelis I*, 490 B.R. at 313–327. Both of these rationales were upheld on appeal. *In re Bavelis*, 2013 WL 6672988, at *34–44. The Sixth Circuit has not decided the preclusive effect of a prior judgment that rests on multiple grounds of "equal . . . importance." *ChriMar Systems, Inc. v. Foundry Networks, Inc., Civil Action*, No. 06-13936, 2010 WL 11493198, at *5 (E.D. Mich. Apr. 26, 2010). But the Sixth Circuit has opined that when "one ground for the decision is clearly primary and the other only secondary, the secondary ground is not 'necessary to the outcome' for the purposes of issue preclusion." *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 910 (6th Cir. 2001). The primary finding, however, is preclusive. In determining whether one ground for decision is primary or secondary, courts have looked at the length of discussion devoted to each issue.

Here, the Bankruptcy Court's discussion of failure of consideration lasted roughly one and a half pages. Its findings on fraudulent inducement, on the other hand, involved nearly thirteen pages. While the discussion of failure of consideration followed on the heels of a four page discussion of other contract principles, enough that the failure of consideration claim was not an "afterthought," *see ChriMar Systems, Inc.*, 2010 WL 11493198, at *5 (describing *Eliadis* as

21

motivated by treatment of one ground as an "afterthought"), the Bankruptcy Court nevertheless spent far more time discussing the fraud claim. Therefore, this Court finds that the fraud claim was the primary grounds on which the Bankruptcy Court invalidated the QC Note.

Even accepting that the fraud finding was necessary to the judgment, the question remains whether the finding that Mr. Doukas's representations as to his efforts with Mr. Qureshi were necessary to finding that Mr. Doukas fraudulently induced Mr. Bavelis to sign the QC Note. Mr. Doukas's promises regarding Mr. Qureshi were only one of several false promises that the Bankruptcy Court found induced Mr. Bavelis to sign the QC Note. Nevertheless, part of the Bankruptcy Court's findings was that Mr. Doukas participated in a "'full range of . . . troubling series of events visited on' Mr. Bavelis." *Bavelis I*, 490 B.R. at 318 (quoting *Braddock*, 871 N.Y.S.2d at 73). Thus, part of the finding was that the series of Mr. Doukas's conduct was fraudulent, not just the individual instances. Furthermore, the Doukas Defendants' 2012 Proposed Findings of Fact, in which they invited the Bankruptcy Court to rule on the ownership of the Florida LLCs belies any argument that the findings of fact on the fraud claims were not necessary. (2:10-ap-2508, Doc. No. 245 at 32–33, 38). *Cf. United States v. Sandoz Pharmaceuticals Corp.*, 894 F.2d 825, 828 (6th Cir. 1990) (finding that a party, "having placed [particular] studies [in] issue . . . cannot now argue that it was unnecessary for the . . . district court to rule on their relevance.").

Third, the Bankruptcy Court's March 2013 decision was a final decision on the merits. *Bavelis I* was a core proceeding, that is, one in which the Bankruptcy Court is authorized to enter final judgment. The Bankruptcy Court made thorough findings on Mr. Bavelis's fraudulent inducement claim, which were upheld on appeal. *In re Bavelis*, 2013 WL 6672988, at *34–39.

Fourth, the Doukas Defendants "must have had a full and fair opportunity to litigate the issue in the prior proceeding." *Georgia-Pacific Consumer Prods. LP*, 701 F.3d at 1098 (citing *Cobbins v. Tenn. Dep't of Transp.*, 6 F.3d 582, 589–90 (6th Cir. 2009)). Defendants in this case are Mr. Doukas, Quick Capital of L.I. Corp., Blair, R.P.M., Nemesis, and Leftheris while in *Bavelis I*, the Defendants were Mr. Doukas and Quick Capital of L.I. Corp. Thus, several Defendants in this case were not involved in the prior litigation.

Different defendants may nevertheless be bound by a previous judgment in six circumstances: (1) when the party "agrees to be bound," (2) when there is a "'substantive legal relationship' between the person to be bound and a party to the judgment," (3) because the party was "adequately represented by someone with the same interests who [wa]s a party," (4) the "nonparty . . . 'assume[d] control' over the litigation in which that judgment was rendered," (5) the new party is "relitigating through a proxy," and (6) by statutory decree. *Taylor v. Sturgell*, 553 U.S. 880, 893–95 (2008) (internal citations and quotations omitted). As Mr. Bavelis has pointed out, Mr. Doukas is "the sole owner of each company" involved. (2:17-cv-327, Doc. No. 1-3 at 29). He is the individual who made the false promises, and he suggested in March 2013 that the Bankruptcy Court go ahead and determine ownership of the LLC interests. At a minimum, the interests of the new Defendants in this case were adequately represented by someone with the same interests (Mr. Doukas) who was a party to the earlier proceeding.

Thus, the findings from *Bavelis I* that Mr. Doukas made false statements, including that he never intended to negotiate with Mr. Qureshi in a way that was favorable to Mr. Bavelis, are preclusive. This factual finding, however, must still be analyzed in light of Florida law and in light of the Doukas Defendants' objection that Mr. Bavelis cannot satisfy the reliance requirement of a Florida fraudulent inducement claim.

## 2. Fraudulent Inducement Under Florida Law

Neither party has objected to the substantive law applied here. A claim for fraudulent inducement under Florida law requires: "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010) (quoting *Johnson v. Davis*, 480 So. 2d 625, 627 (Fla. 1985)). As the Bankruptcy Court noted, it is unclear what standard of reliance applies under Florida law. The Florida Supreme Court in *Butler* held that justifiable reliance was not required, but it also found this holding to be in accordance with its prior decisions in *Besett v. Basnett*, 389 So. 2d 995 (Fla. 1980), and *Johnson*, 480 So. 2d 625, which did not appear to dispense with the justifiable reliance requirement. Regardless of what the Florida Supreme Court chose to call its reliance standard, what the Florida Supreme Court articulated was: (1) it was following its precedent in *Besett* and *Johnson* and (2) that the recipient of a fraudulent statement "did not need to allege that [he] had investigated the truth of the misrepresentations." *Butler*, 44 So. 3d at 105.

*Besett* adopted the Restatement (Second) of Torts §§ 540–41 which state that "the recipient of a fraudulent misrepresentation of fact is justified in relying upon its truth, although he might have ascertained the falsity of the representation had he made an investigation," *id.* at §540 but not "if he knows that it is false or its falsity is obvious to him." *Id.* at § 541. The Restatement (Second) clarifies that "if a mere cursory glance would have disclosed the falsity of the representation, its falsity is regarded as obvious under the rule," *id.* at §540, Comment a, and suggests that the obviousness of a falsity should be determined based on the characteristics of the

individual. *See Id.* at § 541, Comment a (falsity obvious to an "experienced horseman . . . may not be patent to a person who has had no experience with horses.").

Here, to support his claim for fraudulent inducement, Mr. Bavelis must show that he did not know that Mr. Doukas's statements were false nor was the falsity of the statements obvious to him. Mr. Bavelis has carried this burden. Mr. Doukas told Mr. Bavelis he would return the LLC interests after he negotiated with Mr. Qureshi. Mr. Bavelis could not have known that Mr. Doukas did not intend to keep his promise to resolve the issues favorably for Mr. Bavelis or would later refuse to return the LLC assignments.

Mr. Doukas contends that Mr. Bavelis cannot show either justifiable or reasonable reliance. (2:17-cv-327, Doc. No. 1-2 at 30). The Doukas Defendants assert that Florida law "requires an examination of subjective evidence of reliance," which in turn would require this Court to look at Mr. Bavelis's extensive business experience and "the fact that he had his own personal attorney assisting him in managing his financial affairs." (*Id.* at 31). The Defendants assert that Mr. Bavelis could not have relied on any statements promising estate planning. Unfortunately for the Doukas Defendants, this Court's review of the record reveals that any false statements underlying the LLC assignments concerned not estate planning but Mr. Doukas's promises to help resolve the conflict with Mr. Qureshi and then return Mr. Bavelis's stake in the LLCs to him. Thus, the Doukas Defendants' protestations about Mr. Bavelis's misplaced reliance on any estate planning promises are irrelevant to the LLC assignments.

As to Mr. Doukas's statements that he would negotiate with Mr. Qureshi and return the LLC interests to Mr. Bavelis, the most the Doukas Defendants do to challenge reliance on such statements is to incorporate their prior proposed findings of fact and conclusions of law (2:10-ap-2508, Doc. Nos. 245, 616, and 674) and to say "that the transactions were designed to assist Mr.

Bavelis." (2:17-cv-327, Doc. No. 1-2 at 7–8). In their previous filings, the Doukas Defendants assert that "Qureshi testified that in December 2009, [Mr. Bavelis] and Doukas came to an oral agreement on the terms and purchase price Doukas would pay for Qureshi's 50% interests in the four Florida LLCs." (2:10-ap-2508, Doc. No. 245 at 19). Defendants have not provided Mr. Qureshi's testimony, nor have they adequately pointed this Court to its placement in the record. While Mr. Qureshi's statement on this matter could go towards rebutting any evidence that Mr. Doukas made false statements, Mr. Qureshi's testimony has little to do with reliance itself. Furthermore, even if Mr. Doukas did reach such a point in his negotiations with Mr. Qureshi, such agreement does not negate the possibility of a false statement from Mr. Doukas that he would return the LLC assignments to Mr. Bavelis. That statement would still support a finding of fraudulent inducement.

Thus, Mr. Bavelis has made out a claim for fraudulent inducement under Florida law.

### D. Damages

In addition to rescission, the Bankruptcy Court recommended $116,600 in compensatory damages and $1 million in punitive damages. The Doukas Defendants contest the Bankruptcy Court's recommended compensatory and punitive damages awards. The compensatory damages award is based on two checks that Mr. Bavelis wrote to Quick Capital for $58,300. Mr. Bavelis believed these checks were to be for estate planning, but they also were a near-exact match for the interest specified under the QC Note. Either way, in denying Quick Capital's claim against Mr. Bavelis, the Bankruptcy Court found this $116,600 to be injury that Mr. Bavelis suffered as a result of Mr. Doukas's fraudulent conduct.

The Doukas Defendants argue that because Mr. Bavelis could not prove the elements of a Florida fraud claim, it is improper to award Mr. Bavelis $116,600. (2:17-cv-327, Doc. No. 1-2 at

31–34). Because Mr. Bavelis cannot recover the $116,600, the Doukas Defendants argue that the punitive damages award is also improper because an award of compensatory damages is required before punitive damages can be awarded in a fraud case.

## 1. Compensatory Damages

The Doukas Defendants deny that the checks totaling $116,600 were for estate planning and point out that they were nearly the exact amount called for under the QC Note as interest, which was to be $58,333.33 per month. Here, the Doukas Defendants again raise the issue of reliance as to the estate planning claims. Like the findings of fraudulent intent that apply to the assignments of the LLC interests, the parties litigated, and the Bankruptcy Court decided, the issue of reliance on Mr. Doukas's alleged estate planning statements in *Bavelis I*. In *Bavelis I*, the Bankruptcy Court found that Mr. Doukas had made representations regarding estate planning and "that the QC Loan Documents related to estate planning." *Bavelis I*, 490 B.R. at 277. That court's findings on Mr. Doukas's fraud underlying the QC Note are preclusive here. The *Bavelis I* findings also preclude this Court from concluding that Mr. Doukas's representations regarding estate planning constituted a separate fraud—rather, the estate planning representations were intertwined with the fraud underlying the QC Note. Regardless of whether those checks were for interest under the note and not estate planning, the Bankruptcy Court found the Note to be invalid. Hence, even accepting the Doukas Defendants' contention, Mr. Bavelis should not have been responsible for any interest under the QC Note.

More problematic for the Bavelis Plaintiffs is that rescission and damages are alternative remedies under Florida law. *Mazzoni Farms v. E.I. Dupont De Nemours & Co.*, 761 So.2d 306, 313 (Fla. 2000) ("Consistent with the majority view, Florida law provides for an election of remedies in fraudulent inducement cases: rescission, whereby the party repudiates the transaction,

or damages, whereby the party ratifies the contract."). This doctrine is grounded in the distinction between law and equity and the principle that "cases in which the remedy sought is the recovery of money damages do not fall within the jurisdiction of equity." *See McElrath v. ABN AMRO Mortg. Group, Inc.*, Case No. 11-62216-CIV-COHN/SELTZER, 2012 U.S. Dist. LEXIS 17361, at *22 (S.D. Fla. Feb. 13, 2012). The Bankruptcy Court recommended rescission of the assignments, and neither party has objected to such a finding. Having granted rescission, damages are not available to the Bavelis Plaintiffs.

Nevertheless, the Court in its equity jurisdiction may grant "such incidental damages as are necessary to effect complete relief." *Hauser v. Van Zile*, 269 So.2d 396, 398 (Fla. Ct. App. 1972) (citing *Norris v. Eikenberry*, 137 So. 128, 133 (Fla. 1931)). *See also* 9 Fla. Jur. 2d *Cancellation, Rescission, and Reformation of Instruments* § 3 (2018) (explaining that courts granting equitable relief may also grant incidental damages). The Bankruptcy Court recommended $116,600 in damages under a theory of unjust enrichment. As with rescission, the Doukas Defendants did not contest awarding these damages under a theory of unjust enrichment; rather they contested awarding *any* damages in their steadfast assertion that Mr. Bavelis could not show fraudulent inducement. But even if the Doukas Defendants had contested the doctrine of unjust enrichment as applied to the two checks at issue, this Court would still have the power to order the return of the $116,600 as damages incidental to rescission and designed to make Mr. Bavelis whole. Thus, this Court adopts the Bankruptcy Court's recommended amount of damages.

## 2. Punitive Damages

The Doukas Defendants have also contested the recommended punitive damages. Florida law does not permit punitive damages for fraud "without an award of damages arising from the fraud." (ECF No. 1-2 at 33). The Bankruptcy Court relied on *Engle v. Liggett Group, Inc.*, 945

28

So.2d 1246, 1262 (Fla. 2006) for the proposition that "an award of compensatory damages need not precede a determination of entitlement to punitive damages." But Florida district courts have subsequently noted, this statement "address[ed] the order of proof in determining entitlement to punitive damages." *Morgan Stanley & Co. v. Coleman (Parent) Holdings, Inc.*, 955 So.2d 1124, 1133 (Fla. Ct. App. 2007). Furthermore, "Punitive damages for fraud cannot be based on nominal damages alone." *Id.* These rulings are based on the rationale "that compensatory damages for fraud are an essential part of the cause of action which must be shown to sustain a judgment for punitive damages." *Rolls v. Bliss & Nyitray*, 408 So. 2d 229, 237 (Fla. Dist. Ct. App. 1981).

In recommending an award of punitive damages, the Bankruptcy Court construed the $116,600 as compensatory damages. This Court has affirmed the Bankruptcy Court's recommendation of an award of $116,600 to Mr. Bavelis as damages available under the Court's equity jurisdiction—*not as compensatory damages*. Without compensatory damages, Florida law prohibits any award of punitive damages. Therefore, the Doukas Defendants' objection as to punitive damages is sustained. Mr. Bavelis is not entitled to punitive damages.

### E. Bankruptcy Court's Additional Recommendations

Being without objection from either party, the remainder of the Bankruptcy Court's decisions are adopted.

### IV. CONCLUSION

For the foregoing reasons, the Doukas Defendants' objections are **OVERRULED IN PART** and **SUSTAINED IN PART**. The Bankruptcy Court's proposed findings of fact and conclusions of law are hereby **ADOPTED** as to all factual findings and legal conclusions except that of punitive damages.

**IT IS SO ORDERED.**

___s/ Algenon L. Marbley_____<br>
**ALGENON L. MARBLEY**<br>
**UNITED STATES DISTRICT JUDGE**

**DATED: January 4, 2019**