**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **GEORGE BAVELIS, et al.,** | : |
| | : |
| **Plaintiffs,** | : |
| | : **Case No. 2:17-CV-00327** |
| **v.** | : |
| | : **CHIEF JUDGE ALGENON L. MARBLEY** |
| **TED DOUKAS, et al.,** | : |
| | : **U.S. Bankruptcy Court – Southern** |
| **Defendants.** | : **District of Ohio No. 2:10-ap-2508** |
| | : |

**OPINION & ORDER**

This matter is before the Court following the Sixth Circuit's limited remand on the issue

of punitive damages. (ECF No. 20). Parties submitted briefing to this Court (ECF Nos. 26–29) and

oral argument was held on December 21, 2020. For the reasons set forth below, the Court

**ADOPTS** the Bankruptcy Court's Proposed Findings of Fact as to the issue of punitive damages,

**MODIFIES** the Bankruptcy Court's Conclusions of Law as to the issue of punitive damages, and

**ADOPTS** the Bankruptcy Court's recommended punitive damages award of $1 million following

a *de novo* review.

## I.    BACKGROUND

This case arose out of an underlying Chapter 11 bankruptcy proceeding, No. 10-58583. On

April 18, 2017, the Bankruptcy Court's Proposed Findings of Fact and Confusions of Law on

Remaining Counts of the Second Amended Complaint came before this Court for resolution. (ECF

No. 1-1). The Bankruptcy Court recommended that all of the assignments from George Bavelis to

Ted Doukas be rescinded and that Mr. Bavelis be awarded compensatory and punitive damages.

(*Id.*). Defendants objected to the Proposed Findings of Fact and Conclusions of Law. (ECF No. 1-

2). The Plaintiffs filed a Memorandum in Opposition to the Objections (ECF No. 1-3).

1

## A.      District Court Proceedings

George Bavelis entered bankruptcy proceedings in 2010. He also brought an adversary proceeding against Ted Doukas and entities owned by Mr. Doukas ("Doukas Defendants") in October 2010, seeking to rescind several assignments that Mr. Bavelis had made to Mr. Doukas that he contends were fraudulently induced. In the 2000s, Mr. Bavelis began working with a Mr. Qureshi to invest in gas stations, office buildings, and mixed-use real estate developments. The ventures between Mr. Bavelis and Mr. Qureshi were approximately $21 million in debt by the time Mr. Bavelis met Mr. Doukas in Fall 2008. Mr. Doukas became involved in the business venture between Mr. Bavelis and Mr. Qureshi, purportedly to attempt to resolve business issues favorably to Mr. Bavelis. As part of Mr. Doukas's efforts to negotiate with Mr. Qureshi, Mr. Doukas insisted that he needed stakes in the various LLCs owned by Mr. Qureshi and Mr. Bavelis. Mr. Bavelis made those assignments, on the understanding that Mr. Doukas would reconvey the interests back to him after the negotiations. Over time, Mr. Doukas requested further assignments, and these assignments became an issue when Mr. Bavelis's attorney suggested that Mr. Bavelis file to dissolve some of his companies. Despite repeated requests, Mr. Doukas did not return the LLC interests to Mr. Bavelis.

The Bankruptcy Court held two trials on the claims in the adversary proceeding. The first trial concerned legal theories that the various assignments to Mr. Doukas were void. The second trial involved claims against the Doukas Defendants and Mr. Doukas's former attorney. Eventually, the Bankruptcy Court recommended that this Court find for Mr. Bavelis on several counts and award compensatory damages in the amount of $116,600 and punitive damages in the amount of $1 million. On January 4, 2019, this Court adopted in part the Bankruptcy Court's Proposed Findings of Fact and Conclusions of Law, sustaining in part and overruling in part the

2

Defendants' Objections thereto. This Court found that the Doukas Defendants had waived their right to a jury trial, that Mr. Bavelis had stated a claim for fraudulent inducement under Florida law, that $116,000 was an appropriate amount of damages under the Court's equity jurisdiction, and that, because Mr. Bavelis was not awarded compensatory damages, punitive damages were prohibited under Florida law.

### B.    Sixth Circuit Appeal and Remand

On January 16, 2019, Mr. Bavelis filed an appeal of this Court's order, asserting that this Court exceeded the scope of review under 28 U.S.C. § 157(c)(1) in disallowing the punitive damages based on an argument not raised by Doukas and that dismissal of punitive damages was incorrect under Florida law. On January 17, 2019, the Doukas Defendants filed a notice of cross-appeal, arguing that this Court did not have jurisdiction on any of the Florida claims and re-asserting that their Seventh Amendment jury trial rights were denied. On March 4, 2019, the Doukas Defendants filed a motion to stay this Court's judgment pending the resolution of the appeal. On October 21, 2019, this Court issued an order denying the motion to stay. On October 19, 2020, the Sixth Circuit Court of Appeals issued its decision vacating this Court's judgment as to damages, affirming in all other aspects,[1] and remanding for further proceedings.

On the issue of damages, the Sixth Circuit held that this Court erred in finding that Florida law prohibits punitive damages absent a corresponding award of compensatory damages. (ECF No. 20 at 3). The court relied on *Ault v. Lohr*, 538 So.2d 454 (Fla. 1989), in which the Florida Supreme Court announced that "a finding of liability alone will support an award of punitive damages 'even in the absence of financial loss for which compensatory damages would be

---

[1] The Sixth Circuit found that jurisdiction in bankruptcy court was proper under the "related to" jurisdictional test. (ECF No. 20 at 11–12). The Sixth Circuit also held that this Court had not exceeded the scope of review under 28 U.S.C. § 157(c)(1). (*Id.* at 17). The Sixth Circuit also affirmed this Court's finding that Mr. Doukas waived his right to a jury trial by participating in the trial without objection. (*Id.*).

appropriate." 538 So.2d at 456 (quoting *Lassiter v. Int'l Union of Operating Eng'rs*, 349 So.2d 622, 626 (Fla. 1976)). While it found that punitive damages were not precluded, the Sixth Circuit opined that "questions remain regarding whether a punitive damages award is proper (and if so, how much)," and determined that it would vacate and remand for further proceedings. (ECF No. 20 at 20). On appeal, the Doukas Defendants had raised new arguments that punitive damages are unavailable because the Plaintiff "elected the equitable remedy of rescission, and punitive damages are never awardable in claims sounding in equity." (*Id.*). Because this Court had not considered this argument in the first instance, the Sixth Circuit determined it was appropriate to remand.

## II.  STANDARD OF REVIEW

A bankruptcy court's jurisdiction is governed by statutory law and Article III of the Constitution. When adjudicating non-core claims, a bankruptcy court has authority to issue only proposed findings of fact and conclusions of law. 28 U.S.C. § 157(c)(1); *Stern v. Marshall*, 564 U.S. 462, 471 (2011). Parties may then file objections, and it is the role of the district court to "make a *de novo* review upon the record or, after additional evidence, of any portion of the bankruptcy judge's findings of fact or conclusions of law to which specific written objection has been made." Fed. R. Bankr. P. 9033(d).  This Court reviews *de novo* "those matters to which any party has timely and specifically objected."  28 U.S.C. § 157(c); *see also* Fed. R. Bankr. P. 9033(d) ("The district judge shall make a *de novo* review upon the record or, after additional evidence, of any portion of the bankruptcy judge's findings of fact or conclusions of law to which specific written objection has been made in accordance with this rule."). Because a specific objection was made to the availability of punitive damages, this Court will proceed with *de novo* review of this portion of the bankruptcy judge's determination, consistent with Section 157(c) and Bankruptcy Rule 9033(d).

4

### III.     LAW & ANALYSIS

**A.     The Sixth Circuit's Remand and the Applicability of the Mandate Rule**

On remand, this Court must consider whether punitive damages are available in this case as a matter of Florida law. In its opinion, the Sixth Circuit found that this Court "erred in holding that Florida law prohibits any award of punitive damages absent compensatory damages," but remanded the matter as questions remained as to whether an award of punitive damages would be proper (and if so, how much). (ECF No. 20 at 19–20). The Sixth Circuit relied on two cases in reaching this conclusion: *Ault v. Lohr*, 538 So.2d 454 (Fla. 1989), and *Engle v. Liggett Group, Inc.*, 945 S.2d 1246 (Fla. 2006). In *Ault*, the Florida Supreme Court held that compensatory damages are not necessary for a court to award punitive damages. 538 So.2d at 455. Instead, the Florida Supreme Court explained that "a finding of liability alone will support an award of punitive damages 'even in the absence of financial loss for which compensatory damages would be appropriate.'" *Id.* at 456 (quoting *Lassiter v. Int'l Union of Operating Eng'rs*, 349 So.2d 622, 626 (Fla. 1976)). In *Engle*, the Florida Supreme Court found it was impermissible to award punitive damages without first resolving all elements of liability. 945 So.2d at 1263–64.

Importantly, the Sixth Circuit included a footnote following its discussion of *Ault* and *Engle* that addressed contrary decisions in the Florida intermediate appellate courts following these two decisions. (ECF No. 20 at 19 n.5). The Sixth Circuit discussed the decision in *Morgan Stanley & Co. v. Coleman (Parent) Holdings, Inc.*, 955 So.2d 114 (Fla. Dist. Ct. App. 2007), where the court vacated an award of punitive damages because no actual damages were found. 955 So.2d at 1131–32. The *Morgan Stanley* court distinguished both *Ault* and *Engle*, finding that *Ault* involved assault, not a fraud case, and finding that *Engle* "address[ed] the order of proof in determining entitlement to punitive damages." 955 So.2d at 1133. The Sixth Circuit found the *Morgan Stanley*

5

decision "hard to reconcile . . . with the relevant Florida Supreme Court precedents." (ECF No. 20 at 19 n.5). The Sixth Circuit impliedly adopted the position of the *Morgan Stanley* dissent, which explained that it is unreasonable to read *Ault* "to mean anything other than that an award of some compensatory damages is unnecessary to find an entitlement to punitive damages.'" (ECF No. 20 at 19.n5 (quoting 955 So.2d at 1137 (Farmer, J., dissenting))).

The Sixth Circuit concluded its discussion on the issue of punitive damages by noting that the Doukas Defendants had raised new arguments about the election of remedies doctrine on appeal, which the Sixth Circuit thought best suited to be addressed by this Court on remand. (ECF No. 20 at 20). On appeal, the Doukas Defendants argued that punitive damages are never awardable to claims sounding in equity, and because Mr. Bavelis had opted for the equitable remedy of rescission, punitive damages were unavailable. (*Id.*). The Sixth Circuit then offered two "observations to guide the further proceedings" in this Court. (*Id.*). First, the Sixth Circuit noted that both this Court and the Bankruptcy Court had "assumed that the $116,600 unjust-enrichment award sounded in equity," but explained that Florida courts have held unjust enrichment actions to be "formerly cognizable at law, not equity." (*Id.* at 20–21). Second, the Sixth Circuit set forth an analytical framework for the election of remedies issue and noted that this Court "should undertake this analysis on remand." (*Id.* at 21).

Under the mandate rule, lower courts must adhere to the commands of a superior court. *United States v. Moored*, 38 F.3d 1419, 1421 (6th Cir. 1994). Following a remand for further proceedings by an appellate court, the trial court must "proceed in accordance with the mandate and the law of the case as established on appeal" and "implement both the letter and the spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces." *Id.* (quoting *United States v. Kikumura*, 947 F.2d 72, 76 (3d Cir. 1991)). This rule precludes a

lower court from "reconsidering an issue expressly or impliedly decided by a superior court." *Id.* This doctrine, however, "has no application where the issue was not previously decided." *Fortis Corp. Ins., S.A. v. Viken Ship Mgmt. AS*, 597 F.3d 784, 792 (6th Cir. 2010) (quoting *Niemi v. NHK Spring Co.*, 543 F.3d 294, 308 (6th Cir. 2008)). To determine whether a district court violated the law of the case doctrine, an appellate court will undertake a two-step analysis: first, it will determine whether the issue was expressly or impliedly decided on appeal; and, second, it will determine whether the appellate court's mandate to the district court "was so narrow in scope as to preclude the district court from considering the [] issue." *Yeschick v. Mineta*, 675 F.3d 622, 633 (6th Cir. 2012) (quoting *Waste Mgmt. of Ohio, Inc. v. City of Dayton*, 169 F. App'x 976, 986 (6th Cir. 2006)) (alterations in original).

## B.    Availability of Punitive Damages

This Court previously granted rescission of the assignments at issue and the decision of the Sixth Circuit leaves that relief undisturbed; the Sixth Circuit vacated this Court's judgment only as to punitive damages and affirmed in all other respects. (ECF No. 20 at 23). In the previous Opinion, this Court found that Florida's election of remedies doctrine barred an award of both rescission and punitive damages based on the distinctions between law and equity. (ECF No. 11 at 27–28). The Sixth Circuit noted that the election of remedies doctrine was applicable, but noted that the proper line of inquiry is  not rooted in the distinction between law and equity but whether "the remedies in question are coexistent and inconsistent," (ECF No. 20 at 23 (quoting *Barbe v. Villenueve*, 505 So.2d 1331, 1332 (Fla. 1987)). Remedies are only considered inconsistent under Florida law when "a certain state of facts relied on as the basis of a certain remedy is inconsistent with, and repugnant to, another certain state of facts relied on as the basis of another remedy." *Klondike, Inc. v. Blair*, 211 So.2d 41, 42–43 (Fla. Dist. Ct. App. 1968). Accordingly, this Court

must consider again the impact of the election of remedies on Mr. Bavelis's claim for punitive damages.

On remand, the Plaintiff argues that the rescission of the LLC assignments to Mr. Bavelis is not factually inconsistent with an award of punitive damages. (ECF No. 27 at 2, 8–9). Mr. Bavelis contends that he is only required to show liability for fraudulent inducement for punitive damages, and the elements of fraudulent inducement are not irreconcilable with the earlier award of rescission. (*Id.* at 10). In response, the Defendants argue that the election of remedies would bar punitive damages because punitive damages are inconsistent with rescission. (ECF No. 26 at 4). Defendant's arguments focus primarily on the incompatibility of the purposes behind these two remedies. (*Id.* at 4–6).[2] They further argue that the $116,600 in damages were awarded "incidental to rescission" and the purpose of these damages would be inconsistent with an award of punitive damages. (*Id.* at 9). In his reply, the Plaintiff argues that he has established the necessary facts t o support an award of punitive damages and that such an award is not consistent with the facts underpinning the award of rescission and unjust enrichment damages. (ECF No. 29 at 5–6). In their reply, the Doukas Defendants continued to stress that punitive damages would be incompatible with the goal of rescission. (ECF No. 28 at 8).

The election of remedies doctrine under Florida law "operates on the theory that a party electing one course of action should not later be allowed to avail himself of an incompatible course." *Barbe*, 505 So.2d at 1332 (citing *Williams v. Robineau*, 168 So. 644, 646 (Fla. 1936)). The election of remedies doctrine aims to prevent a "double recovery for the same wrong." *Id.* (citing *United States v. Weiss Pollution Control Corp.*, 532 F.2d 1009, 1012 (5th Cir. 1976)). Under Florida law, this doctrine will only apply "where the remedies in question are coexistent

---

[2] Despite the instruction of the Sixth Circuit, the Doukas Defendants also argue that the historical distinction between law and equity is relevant to the election of remedies analysis.

and inconsistent." *Id.* "[F]or one remedy to bar another remedy on grounds of inconsistency they must proceed from opposite and irreconcilable claims of right and must be so inconsistent that a party could not logically follow one without renouncing the other." *Id.* at 1333 (citing *Klondike*, 211 So.2d at 43 and 25 *Am. Jur. 2d Election of Remedies* § 11). Election of remedies will, however, permit a plaintiff to pursue consistent remedies in proper circumstances. "If the remedies are several and consistent, the election of one does not operate to waive the others." *Williams*, 168 So. at 646.

Central to the Florida Supreme Court's ruling in *Barbe v. Villeneuve* that the remedies sought were inconsistent was the difference in facts necessary to establish an entitlement to the two remedies. The plaintiff had received treble damages for the loss of the purchase price of a yacht, which was "necessarily predicated" upon a factual assumption that the plaintiff had $50,000 stolen from him. *Id.* A remedy later awarding the plaintiff title to the yacht "necessarily assumed" that the alleged thief had in fact received the purchase price in exchange for the yacht, not stolen the money. *Id.* Such scenarios are "clearly irreconcilable" and the election of remedies doctrine would find that the first elected remedy—the award of treble damages—must prevail.

The Florida Supreme Court has also found election of remedies to apply in cases of fraudulent inducement where a party seeks rescission and damages because the remedies sought were mutually exclusive, in that a claim for rescission must be predicated on disavowal of the contract while a claim for damages requires that same contract's affirmance. *See Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co.*, 761 So.2d 306, 313 (Fla. 2000); *see also Deemer v. Hallett Pontiac, Inc.*, 288 So.2d 526, 528 (Fla. Dist. Ct. App. 1975). In a case of fraudulent inducement, a party must indeed elect between rescission of the contract and compensatory damages, but it does not necessarily follow that election of rescission or damages under a theory of unjust

9

enrichment bars *punitive* damages once liability is found. An election of remedies must necessarily survey the allegedly incompatible remedies and the facts necessary to sustain each remedy. The court will thus examine each of the remedies in turn and considering whether either are irreconcilable with punitive damages.

### 1.     Punitive Damages and Rescission

The Bankruptcy Court recommended punitive damages partially based on Mr. Doukas's conduct concerning the LLC Assignments. This Court adopted the Bankruptcy Court's recommendation of rescission of those Assignments after neither party objected to such a finding. (ECF No. 11 at 28). To succeed on a claim for rescission under Florida law, a plaintiff must demonstrate:

> (1) The character or relationship of the parties;
> (2) The making of the contract;
> (3) The existence of fraud, mutual mistake, false representations, impossibility of performance, or other ground for rescission or cancellation;
> (4) That the party seeking rescission has rescinded the contract and notified the other party to the contract of such rescission;
> (5) If the moving party has received benefits from the contract, he should further allege an offer to restore these benefits to the party furnishing them, if restoration is possible;
> (6) Lastly, that the moving party has no adequate remedy at law.

*Crown Ice Mach. Leasing Co. v. Sam Senter Farms, Inc.*, 174 So. 2d 614, 617 (Fla. Dist. Ct. App. 1965); *see also Lawyers Title & Escrow, Inc. v. S. States Inv. Corp.*, No. 98-5472, 1999 WL 993932, at *3 (6th Cir. Oct. 20, 1999) (quoting *Crown Ice*, 174 So. 2d at 617). In finding that the Plaintiffs had established all elements necessary for rescission, the Bankruptcy Court found the following facts relevant: the nature of the relationship between Mr. Bavelis and Mr. Doukas; Mr. Doukas using the relationship to defraud Mr. Bavelis into executing the Assignments; Mr. Bavelis making repeated requests for return of the Assignments; Mr. Bavelis retaining no benefits under

the Assignments; failure to rescind the Assignments would allow the Doukas Defendants to harm Mr. Bavelis further by using assets they have no right to use, meaning no other remedy would be adequate. (ECF No. 1-1 at 49–50). Mr. Bavelis was thus granted the legal remedy of rescission of the assignments. The Bankruptcy Court also cited the conduct surrounding the Assignments as a basis supporting the award of punitive damages. (ECF No. 1-1 at 69–70). In its previous opinion finding that punitive damages were barred, this Court made that determination not on the fact that the requisite elements were not shown, but under the theory that punitive damages were unavailable because no compensatory damages had been awarded. (ECF No. 11 at 28–29). The Bankruptcy Court's proposed findings of fact and conclusions of law were adopted as to all factual findings and legal conclusions, except that of punitive damages. (ECF No. 11 at 29).

Defendants argue that rescission and punitive damages are incompatible remedies. In particular, the Doukas Defendants argue that once a complainant has been returned to his pre-contract status, that must be the end of the relief. (ECF No. 26 at 4–5). Defendants also cite several cases wherein courts have held that punitive damages have been disallowed where a plaintiff also seeks the remedy of rescission. (ECF No. 26 at 7–8). Plaintiff argues that, even if a plaintiff opts for rescission, he "retains the right and ability to seek and recover punitive damages based on the underlying misconduct." (ECF No. 27 at 8–9). In support of this proposition, Mr. Bavelis relies on *De Pantosa Sanez v. Rigau & Rigau, P.A.*, 549 So.2d 682 (Fla. Dist. Ct. App. 1989), where a Florida appellate court found that rescission of the underlying transaction does not bar an award of punitive damages. (*Id.*). Plaintiff also argues that the merger of law and equity in Florida means that punitive damages are no longer precluded in cases where equitable relief is also sought. (*Id.* at 11–12). The Doukas Defendants challenge the reliance on *De Pantosa Saenz* as misplaced, explaining that the remedies of rescission and punitive damages were granted against different

11

defendants. (ECF No. 28 at 6). The Doukas Defendants also argue that the merger of law and equity is immaterial because Florida courts have continued to disallow punitive damages in cases where rescission was granted. (ECF No. 28 at 9–10).

This Court notes that the Florida Supreme Court has yet to address the impact of merger on the availability of punitive damages in a case where the remedy of rescission has been granted. It is unclear whether an equitable remedy like rescission still, as a matter of law, will bar the awarding of punitive damages following the merger of law and equity. This Court need not reach this issue in determining whether punitive damages are available here, because the conduct surrounding the LLC Assignments is not the only pathway to punitive damages here.

### 2.      Unjust Enrichment Damages and Punitive Damages

The Bankruptcy Court also recommended punitive damages based on Mr. Doukas's conduct concerning the $116,600 conveyed by Mr. Bavelis. This Court adopted the Bankruptcy Court's recommendation of awarding damages under a theory of unjust enrichment related to two checks conveyed by Mr. Bavelis after neither party objected to such a finding. (ECF No. 11 at 28).[3] "The elements of an unjust enrichment claim are 'a benefit conferred upon a defendant by the plaintiff, the defendant's appreciation of the benefit, and the defendant's acceptance and retention of the benefit under circumstances that make it inequitable for him to retain it without paying the value thereof.'" *Fla. Power Corp. v. City of Winter Park*, 887 So. 2d 1237, 1241 n.4 (Fla. 2004) (quoting *Ruck Bros. Brick, Inc. v. Kellogg & Kimsey, Inc.*, 668 So. 2d 205, 207 (Fla. Dist. Ct. App. 1995)). The Bankruptcy Court found that those elements had been satisfied, in reliance on the following facts: Mr. Bavelis sent two checks to Quick Capital, totaling $116,600,

---

[3] The Defendants continually characterize these damages as 'rescissionary,' but this Court was clear in holding that it was awarding these damages under a theory of unjust enrichment. In *dicta*, this Court noted that it *could* have awarded these damages as 'incidental to rescission,' in the alternative, but it did not do so.

which he believed were related to his estate planning; Mr. Doukas advised Mr. Bavelis that he would return the checks; Mr. Bavelis never returned them; Mr. Doukas was enriched at Mr. Bavelis's expense; it would be inequitable to permit Mr. Doukas and Quick Capital to retain the funds. (ECF No. 1-1 at 62–63).

Under Florida law, punitive damages are available under Fla. Stat. § 768.72(2), which instructs that:

> A defendant may be held liable for punitive damages only if the trier of fact, based on clear and convincing evidence, finds that the defendant was personally guilty of intentional misconduct or gross negligence. As used in this section, the term:
>
> (a)    "Intentional misconduct" means that the defendant had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the claimant would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury or damage.

The Bankruptcy Court recommended punitive damages in reliance on the following facts: Mr. Doukas fraudulently represented that he would return the two checks in the aggregate amount of $116,600; Mr. Doukas engaged in this misconduct with actual knowledge of the wrongfulness of his conduct; Mr. Doukas was aware of the high probability that injury or damage would result; Mr. Doukas intentionally pursued a scheme to take Mr. Bavelis's assets; Mr. Bavelis was injured by the conduct, "including the loss of $116,600 and the even greater loss of his indirect membership interests in BMAQ and FLOVEST and his personal 50% membership interest in GMAQ, a limited liability company that owned several million dollars in assets." (ECF No. 1-1 at 69–70).

The Doukas Defendants attempt to characterize the award of $116,600 as rescissionary damages, despite this Court's finding that they had not contested the award of these damages under a theory of unjust enrichment. (*Compare* ECF No. 16 at 4–5 *with* ECF No. 11 at 28). The Doukas

Defendants still maintain as a matter of law that punitive damages are not available as a remedy in this matter because Mr. Bavelis has been made whole by the award of $116,000 in rescissionary damages and punitive damages are unavailable under Florida law unless authorized by statute. (ECF No. 26 at 3–5). In his Reply, Mr. Bavelis argues that this matter has been decided by the Sixth Circuit's opinion in this case and thus this Court is bound by the "law of the case" doctrine. (ECF No. 29 at 3).

As discussed *supra*, Florida law has disallowed the award of punitive damages by a judge sitting in equity, unless there is a statute authorizing such an award. *See Hoppe v. Hoppe*, 370 So.2d 374 (Fla. Dist. Ct. App. 1978). In affirming the Bankruptcy Court's recommendation of an award of $116,000 to Mr. Bavelis, this Court instead made the award under a theory of unjust enrichment, which it presumed was an award made in its equity jurisdiction. (ECF No. 11 at 28). The Sixth Circuit, however, stressed that Florida courts "have clarified that unjust-enrichment actions were formerly cognizable at law, not equity." (ECF No. 20 at 20–21). In support of this proposition, the Sixth Circuit cited *Duty Free World, Inc. v. Miami Perfume Junction, Inc.*, 253 So.3d 689 (Fla. Dist. Ct. App. 2018) and *American Safety Insurance Service, Inc. v. Griggs*, 959 So.2d 322 (Fla. Dist. Ct. App. 2007). These cases settle the matter: unjust enrichment actions were formerly cognizable at law, not equity, and so punitive damages are not wholly barred by the previous award under the theory of unjust enrichment.

In *Duty Free*, the court noted that unjust enrichment aims to "provide restitution where one person has been unjustly enriched at the expense of another." 253 So.3d at 693. The court further explained that, while unjust enrichment has been characterized in Florida jurisprudence as "equitable in nature," "the use of the term 'equitable' in reference to an unjust enrichment claim denotes fairness and does not mandate that unjust enrichment be construed as seeking only an

14

equitable, as opposed to a legal, remedy." *Id.* at 694. When a complainant with a claim for unjust enrichment seeks "the imposition of personal liability" for benefits conferred, the unjust enrichment claim "seeks legal, rather than equitable relief." *Id.* at 697; *see also Restatement (Third) of Restitution and Unjust Enrichment* § 4 cmt. d (Am. Law Inst. 2011) ("The standard legal remedy for a liability based on unjust enrichment is a judgment for money, to be satisfied from the assets of the defendant by the ordinary procedures of execution.").[4] Where the property sought to be recovered or its proceeds "have been so dissipated so that no product remains," restitution will not lie in equity. *Duty Free*, 253 So.3d at 698 (quoting *Great-West*, 534 U.S. at 213–14). The court in *Griggs* reached a similar conclusion in finding that a plaintiff may recover damages under quasi-contract, noting that "an action for unjust enrichment is an action at law, not in equity," despite some decisions in the Florida courts characterizing quasi-contracts as "equitable in nature." 959 So.2d at 331.

The Bankruptcy Court recommended that $116,000 be awarded under a theory of unjust enrichment and this Court affirmed the recommendation of the award "as damages available under the Court's equity jurisdiction." (ECF No. 11 at 29). As characterized by the Sixth Circuit, both this Court and the Bankruptcy Court "assumed that the $116,000 unjust-enrichment award sounded in equity." (ECF No. 20 at 20). Both *Duty Free* and *Griggs* instruct that unjust-enrichment action is an action at law, not in equity, even if the remedy has an equitable character. Because the unjust-enrichment award here sounded in law, punitive damages are not precluded as a matter of Florida jurisprudence, regardless of the abolition of the distinction between law and equity.

---

[4] The *Duty Free* court relied heavily on a 2002 decision wherein the U.S. Supreme Court addressed the difference between legal and equitable forms of restitution, *Great-West Life & Annuity Insurance Co. v. Knudson*, 534 U.S. 204 (2002). In *Great-West*, the Court found that an action for restitution was considered legal where plaintiff "sought 'to obtain a judgment imposing a merely personal liability upon the defendant to pay a sum of money.'" 534 U.S. at 213 (quoting *Restatement of Restitution* § 160 cmt. a (1936)).

The issue remains as to whether the election of remedies bars recovery of punitive damages alongside damages awarded under a theory of unjust enrichment. In the original opinion, this Court held that rescission and damages are alternative remedies under Florida law and characterized the election of remedies doctrine as "grounded in the distinction between law and equity and the principle that 'cases in which the remedy sought is the recovery of the money damages do not fall within the jurisdiction of equity.'" (ECF No. 11 at 27–28). This Court's awarding of damages under a theory of unjust enrichment is undisturbed by the Sixth Circuit's opinion, but the election of remedies doctrine is relevant to whether punitive damages are permitted.

As previously discussed, the election of remedies doctrine aims to prevent a "double recovery for the same wrong" but only applies "where the remedies in question are coexistent and inconsistent." *Barbe v. Villeneuve*, 505 So.2d 1331, 1332 (Fla. 1987) (citing in part *United States v. Weiss Pollution Control Corp.*, 532 F.2d 1009, 1012 (5th Cir. 1976)). "[F]or one remedy to bar another remedy on grounds of inconsistency they must proceed from opposite and irreconcilable claims of right and must be so inconsistent that a party could not logically follow one without renouncing the other." *Id.* at 1333 (citing *Klondike, Inc. v. Blair*, 211 So.2d 41, 43 (Fla. Dist. Ct. App. 1968) and 25 *Am. Jur. 2d Election of Remedies* § 11). Election of remedies will, however, permit a plaintiff to pursue consistent remedies in proper circumstances. "If the remedies are several and consistent, the election of one does not operate to waive the others." *Williams v. Robineau*, 168 So. 644, 646 (Fla. 1936). For instance, a prior judgment on a mortgage note will not act as a bar to the subsequent foreclosure action on the collateral securing that note, because such remedies are consistent. *See Barbe*, 505 So.2d at 1333.

Unlike rescission, damages for unjust enrichment and punitive damages fall into the category of remedies that are "several and consistent," such that the award of one will not bar the

16

others. The facts necessary to support damages under a theory of unjust enrichment are not inconsistent with those necessary to support punitive damages. Punitive damages require a finding that a defendant "was personally guilty of intentional misconduct or gross negligence." Fla. Stat. § 768.72(2). To show intentional misconduct, it must be demonstrated that "the defendant had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the claimant would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury or damage." *Id.* The Bankruptcy Court found these elements satisfied by Mr. Doukas's conduct surrounding the two checks totaling $116,600. (ECF No. 1-1 at 69–70). In adopting the recommendation of the Bankruptcy Court to award Mr. Bavelis $116,600 in damages under a theory of unjust enrichment, this Court did so by affirming the following facts relied on by the Bankruptcy Court: Mr. Bavelis sent two checks to Quick Capital, totaling $116,600, which he believed were related to his estate planning; Mr. Doukas advised Mr. Bavelis that he would return the checks; Mr. Bavelis never returned them; Mr. Doukas was enriched at Mr. Bavelis's expense; it would be inequitable to permit Mr. Doukas and Quick Capital to retain the funds. (ECF No. 1-1 at 62–63).

None of the factual elements necessary to establish a claim for unjust enrichment is "opposite and irreconcilable" from those necessary to establish a claim for punitive damages resulting from intentional misconduct, as to the checks. Double recovery is only barred where remedies are *inconsistent* and irreconcilable. A finding that Mr. Doukas intentionally pursued a course of conduct that caused harm to Mr. Bavelis, and that that conduct amounts to unjust enrichment, are coexistent and consistent. This Court finds that the election of remedies does not bar an award of punitive damages where damages under a theory of unjust enrichment have been awarded.

17

**(b)     Appropriateness of Punitive Damages**

Once a court finds that punitive damages are an available remedy, a court must still determine whether an award of such damages is proper. In its previous opinion, this Court did not adopt the findings of fact and conclusions of law of the Bankruptcy Court as to punitive damages because it found punitive damages were disallowed as a matter of law. (ECF No. 11). Having now reached the opposite conclusion, this Court will conduct a *de novo* review of these findings and conclusions.

The Doukas Defendants argue that punitive damages are inappropriate because Mr. Doukas has already been "significantly punished" and thus punitive damages are unnecessary to serve the values of punishment and deterrence. (ECF No. 26 at 10–11). The Doukas Defendants further argue that the serious punitive damages award should not be imposed by this Court on the basis of a "dry record" and that this Court's acceptance of the Bankruptcy Court's particular recommendations on this matter would be "inconsistent with the *de novo* and independent review" required by law. (ECF No. 26 at 17). In his Reply, Mr. Bavelis argues that, without punitive damages, Doukas will escape any punishment for his fraudulent actions. (ECF No. 29 at 6–7). He also counters that the characterization of the record in this matter as "dry," as it consists of hundreds of pages of factual findings already adopted by this Court and that those findings firmly establish the requisite "reprehensibility" needed to support an award of punitive damages. (ECF No. 29 at 7–8). Finally, Mr. Bavelis notes that a district court performing a *de novo* review of the Bankruptcy Court may review the record without the need for additional live testimony. (*Id.* at 8).[5]

---

[5] Federal Rule of Bankruptcy Procedure 9033(d) requires this Court to make a *de novo* review upon the record to any portion of the bankruptcy judge's findings of fact or conclusions of law to which a specific written objection has been made. In performing this *de novo* review, a district court *may* receive further evidence, but it is not mandatory to do so. *See Waldman v. Stone*, 599 F. App'x 569, 572–73 (6th Cir. 2015); *see also In re Hipp, Inc.*, 895 F.2d 1503, 1519 (5th Cir. 1990) (finding that "review under Rule 9033(d) . . . may be solely on the record and without any additional hearing or evidence"). This Court finds that, given the extensive record in this case, an evidentiary hearing on the issue of punitive damages is unnecessary to perform *de novo* review as required by Rule 9033(d).

Before punitive damages may be awarded, a plaintiff must establish her entitlement to such an award by "clear and convincing evidence" under Florida law. Fla. Stat. § 768.725. A trial court may award punitive damages in a bench trial, *see, e.g.*, *Bank of America, N.A. v. Pate*, 159 So.3d 383, 384 (Fla. Dist. Ct. App. 2015) (affirming punitive damages award in bench trial), and an award of punitive damages will be reviewed for abuse of discretion, *see Engel v. Liggett Group, Inc.*, 945 So.2d 1246, 1263 (Fla. 2006). Punitive damages are awarded for the purpose of punishing a wrongdoer and deterring others from similar wrongful conduct, not for the purpose of compensating an injured victim. *See Owens–Corning Fiberglas Corp. v. Ballard*, 749 So.2d 483, 486 (Fla. 1999); *see also Estate of Despain v. Avante Grp., Inc.*, 900 So.2d 637, 640 (Fla. Dist. Ct. App. 2005). When a defendant's conduct "transcend[s] the level of ordinary negligence and enter[s] the realm of willful and wanton misconduct," punitive damages are proper. *Estate of Despain*, 900 So.2d at 640. Florida law requires "the manifest weight of the evidence does not render the amount of punitive damages assessed out of all reasonable proportion to the malice, outrage, or wantonness of the tortious conduct." *Engle*, 945 So.2d at 1263 (citing *Arab Termite & Pest Control of Fla., Inc. v. Jenkins*, 409 So.2d 1039, 1043 (Fla. 1982)).

The Supreme Court of Florida has also determined that the wealth of the defendant is a factor for consideration in determining the reasonableness of a punitive award: "an award must be reviewed to ensure that it bears some relationship to the defendant's ability to pay and does not result in economic castigation or bankruptcy of the defendant." *Engle*, 945 So.2d at 1263; *see also Rinaldi v. Aaron*, 314 So.2d 762, 764 (Fla.1975); *St. John v. Coisman*, 799 So.2d 1110, 1115 (Fla. Dist. Ct. App. 2001). In imposing punitive damages, a wrongdoer may be punished "by exacting from his pocketbook a sum of money which, according to his financial ability, will hurt, but not bankrupt." *Bould v. Touchette*, 349 So.2d 1181, 1186–87 (Fla. 1977). Notably, the Doukas

Defendants have not objected to the $1 million in punitive damages on the grounds that Mr. Doukas cannot afford to pay such damages, nor have the Defendants produced any evidence as to Mr. Doukas's net worth.

Under Florida law, punitive damages may also be subject to a statutory cap. Section 768.73(1)(a) of the Florida Statutes provides that "an award of punitive damages may not exceed the greater of: 1. Three times the amount of compensatory damages awarded to each claimant entitled thereto, consistent with the remaining provisions of this section; or 2. The sum of $500,000." If the fact finder determines "at the time of injury the defendant had a specific intent to harm the claimant and determines that the defendant's conduct did in fact harm the claimant, there shall be no cap on punitive damages." *Id.* § 768.73(1)(c). To award a punitive award greater than $500,000, the fact finder must find both specific intent to harm and actual harm. In *In re Bavelis* ("*Bavelis I*"), 490 B.R. 258 (Bankr. S.D. Ohio 2013), the Bankruptcy Court determined that Mr. Doukas intended an injury to occur to Mr. Bavelis. 490 B.R. at 318 (finding that Mr. Doukas "intended to take advantage of Mr. Bavelis and deprive him of his assets"). As this Court has already affirmed in its finding of unjust enrichment, this conduct in fact harmed Mr. Bavelis, by depriving him of $116,600. (ECF No. 11 at 28). Accordingly, the elements have been met that would justify an award above the statutory damage cap of $500,000 in this case.

In determining the appropriate amount of punitive damages, this Court must be cognizant of the purpose of punitive damages—to punish the Defendant for wrongdoing and deter similar misconduct in the future—as well as the requirement in Florida law that such an amount be assessed in "reasonable proportion to the malice, outrage, or wantonness of the tortious conduct." The Doukas Defendants argue that punitive damages are inappropriate because Mr. Doukas has already been "significantly punished" and punitive damages are unnecessary to serve the values

of punishment and deterrence. (ECF No. 26 at 10–11). The Doukas Defendants argue that Mr. Doukas suffered financial losses in the course of his dealings with Mr. Bavelis, which the Bankruptcy Court held was a purchase of shares in the amount of $1.7 million and, notably, was not made on behalf of Mr. Bavelis. *See Bavelis I*, 490 B.R. at 312–27. Plaintiff counters that suffering "out-of-pocket losses" is not punishment and does not serve the related purpose of deterrence. (ECF No. 29 at 6). The Plaintiff also argues that, taking Mr. Doukas's losses into consideration, "would essentially reward him—via a reduced punitive damages award—for his own misconduct." (*Id.* at 7).

An award of $1 million in punitive damages is supported by the facts here and is proper under Florida law. It has been established by clear and convincing evidence that Mr. Doukas fraudulently induced Mr. Bavelis to convey two checks totaling $116,600 to him on the promise that he would return them. The Bankruptcy Court recommended punitive damages on the grounds that Doukas acted intentionally to defraud Mr. Bavelis, and "intentionally pursued a scheme to take Bavelis's assets." (ECF No. 1-1 at 70); *see also Bavelis I*, 490 B.R. at 318. In *Bavelis I*, the Bankruptcy Court also found that Mr. Doukas engages in a course of business dealing wherein he "create[ed] a leverage that you can negotiate so it will make money" and that he "take[s] [his] chances and always win[s]." 490 B.R. at 268, 274. The Bankruptcy Court found, by clear and convincing evidence, that the Doukas Defendants "engaged in egregious, bad-faith conduct in multiple ways." (ECF No. 1-1 at 26). To deter an actor that sees risk-taking and fraud as appropriate business behavior, a significant punitive damages award is necessary. While the harm to Mr. Bavelis has been mitigated by the unjust enrichment award of $116,600, the separate need to punish Mr. Doukas for his intentional, harmful conduct was not satisfied by that award. Where a defendant has "tactically and deceptively" induced a plaintiff to act and "pledge[ed] continued

loyalty" to the victim while "simultaneously scheming" to take actions to undermine the plaintiff's business, a court applying Florida law found it appropriate to award $3 million in punitive damages. *Flying Fish Bikes, Inc. v. Giant Bicycle, Inc.*, 181 F. Supp. 3d 957 (M.D. Fla. 2016). In light of Mr. Doukas's flagrant, intentional violation of a relationship of trust and the need to deter his risk-taking "business strategies," $1 million in punitive damages are in "reasonable proportion to the malice, outrage, or wantonness of the tortious conduct."

Furthermore, any punitive damages awarded must also fall within the bounds of the U.S. Constitution. The Supreme Court has set forth three "guideposts" in determining whether an award is constitutionally appropriate:

> (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases.

*State Farm Mutual Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 418 (2003). Conduct will be considered reprehensible when it "evince[s] an indifference to a reckless disregard of the health or safety of others" and "the harm was the result of intentional malice, trickery, or deceit." *Campbell*, 538 U.S. at 419. Mr. Doukas's conduct is highly reprehensible: he defrauded Mr. Bavelis out of $116,600, with specific intent to harm Mr. Bavelis, betrayed a relationship of confidence and trust, and continued his fraudulent course of conduct, intentionally, despite the knowledge that the stress would made Mr. Bavelis "sick." *Bavelis I*, 490 B.R. at 272, 305, 318. The disparity between the harm suffered and the punitive damages awarded is safely within the constitutional range: Mr. Bavelis suffered $116,600 in economic harm, and the punitive damages award is approximately 8.5 times that value.[6] The Supreme Court has been hesitant to impose a bright-line ratio which

---

[6] The Bankruptcy Court also noted that Mr. Doukas had unsuccessfully attempted to inflict other frauds on Mr. Bavelis, which it found relevant to the punitive damages analysis. (ECF No. 1-1 at 74–75). The Bankruptcy Court

punitive damages may not exceed in comparison to the harm suffered, but has provided the following "instructive" guidance: "Single-digit multipliers are more likely to comport with due process, while still achieving the State's goals of deterrence and retribution, than awards with ratios in range of 500 to 1 or . . . of 145 to 1." *Campbell*, 538 U.S. at 410 (internal citations omitted); *see also R.J. Reynolds Tobacco Co. v. Coates*, --- So.3d ---, 2020 WL 6219570, at *4 (Fla. Dist. Ct. App. Oct. 23, 2020) (noting that "when the compensatory award is small, a larger punitive to compensatory ratio may be appropriate"). Finally, a "review of amounts awarded in similar cases 'has at least a limited value' when reviewing a punitive damages award against a claim of excessiveness, but each case must be 'measured in the light of the circumstances peculiar to it'" *R.J. Reynolds*, 2020 WL 6219570, at *3 (quoting *Odom v. R.J. Reynolds Tobacco Co.*, 254 So. 3d 268, 276 (Fla. 2018)). A review of cases involving fraudulent conduct where punitive damages were awarded supports this award. In *Bill Branch Chevrolet, Inc. v. Burkert*, 521 So.2d 153, (Fla. Dist Ct. App. 1988), the court noted that when reasonable individuals could differ as to whether a punitive damages award so large as to "shock the conscience," there was no abuse of discretion in awarding such damages. 521 So.2d at 155. The *Burkert* court then affirmed an award of $667,000 in punitive damages, where compensatory damages only totaled $1768, in a case involving fraudulent conduct. *Id.* at 156. Thus, awarding $1 million in punitive damages is consistent with the U.S. Constitution.

An award of $1 million in punitive damages is not out of proportion with the fraudulent conduct at issue, serves the values of punishment and deterrence, and does not run afoul of the U.S. Constitution.

---

also notes that the actual harm to Mr. Bavelis also includes substantial attorneys' fees, which Mr. Bavelis cannot recover under Florida law. (*Id.*).

## IV.    CONCLUSION

For the foregoing reasons, the Court **ADOPTS** the Bankruptcy Court's Proposed Findings of Fact (ECF No. 1-1) as to the issue of punitive damages, **MODIFIES** the Bankruptcy Court's Conclusions of Law as to the issue of punitive damages, and **ADOPTS** the Bankruptcy Court's recommended punitive damages award of $1 million following a *de novo* review.

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATED:  January 21, 2021**